UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW CHIARAVALLO, | : | NO.: 3:18-CV-01360-SRU |
|    Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CITY OF MIDDLETOWN; DANIEL DREW | : | |
| | : | |
|    Defendants | : | NOVEMBER 30, 2020 |

**DEFENDANTS' RULE 56(a) STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.  Plaintiff alleges that Middletown Transit District (colloquially known as "Middletown Area Transit" and hereinafter referred to as "MAT") employed Plaintiff as its district manager/chief executive officer with the title of Administrator from April 2012, through his termination on June 30, 2017.  (Compl., ¶¶ 3, 16, 18, 82).

2.  The MAT Board of Directors appointed Plaintiff to this position.  (Id., ¶ 16).

3.   MAT is a "body corporate and politic" that was established by seven municipalities pursuant to Conn. Gen. Stat. § 7-273b, including the City of Middletown and the Towns of Middlefield, Portland, Cromwell, East Hampton, Durham and the City of Meriden.  (Id., ¶ 3, 4).

4.  In his role as Administrator, Plaintiff was responsible for overseeing and managing the operations of MAT.  (Pl's Compl. ¶ 18.)

5.  The affairs of MAT are managed by a Board of Directors constituted in accordance with Conn. Gen. Stat. § 7-273c.  (Id.).

6.  At all times relevant to this Complaint, MAT's Board of Directors was comprised of six directors.  (Id., ¶¶ 3, 5).

7. At all times relevant to the Complaint Defendant Drew was the Mayor for the City of Middletown (Id.).

8. As Administrator of MAT, Plaintiff was responsible for overseeing and managing MAT's operations. (Id., ¶ 19). In his capacity as Administrator, Plaintiff reported directly to MAT's Board of Directors. (Id., ¶ 20).

9. In addition to funding from the State of Connecticut, MAT received funding from the Federal Transit Administration and Defendant City. (Id., ¶ 23).

10. In 2017, Mayor Drew made several communications regarding MAT's performance. On June 9, 2017, Defendant Drew sent Plaintiff a letter in which Mayor Drew stated that he learned about MAT's service cuts after they were announced, and only after he was told by members of the public that service had been cut (Compl., ¶ 53; June 9th Ltr. Exh. E, Mayor's Depo trans, pp.48-49 Exh. B).

11. The letter also contained statements that MAT implemented anticipated service cuts in a way that potentially violated federal law and Plaintiff failed to inform Mayor Drew and other local officials about the challenges MAT faced. (Compl., ¶¶ 54, 55; June 9th Ltr. Exh. E, Drew Aff. ¶ 9, Exh. C)

12. Instead, Mayor Drew received emails and phone calls at his office about the specific service cuts. Constituents of the City of Middletown also made comments on social media and organized public rallies outside of MAT. (Mayor's Depo trans, p.49 Exh. B, Drew Aff. ¶ 17, Exh. C).

13. In May or June of 2017, Mayor Drew became aware of financial and management concerns with MAT. He learned this information from constituents through complaints concerning closures to routes H and I, and the discontinuation of the evening service. He subsequently also learned that the scope of the problem was serious and required a serious solution. (Drew Aff. ¶ 6, Exh. C)

14. Plaintiff did not inform Mayor Drew about the extent of the severity of MAT's finances, or that its continued operation was in jeopardy. (Mayor's Depo trans, p.51 Exh. B, Drew Aff. ¶ 7, Exh. C).

15. Plaintiff did not specifically inform Mayor Drew in advance about what service cuts were going to be made. (Pl. depo. Tr. P. 126, Exh. A, Drew Aff. ¶ 17, Exh. C)

16. Plaintiff cannot recall whether Mayor Drew stated that "*Andrew Chiaravallo*", implemented cuts in a way that violates Federal law, instead of MAT. (Pl. depo. Tr. P. 127, Exh. A)

17. While Plaintiff generally told Mayor Drew about MAT's situation, he did not tell the Mayor about the level of crisis that MAT was facing. (Pl. depo. Tr. P. 128, Exh. A, Drew Aff. ¶ 18, Exh. C)

18. Plaintiff cannot identify where in Mayor Drew's letter that the Mayor falsely accused *him* of implementing service cuts in a way that potentially violates Federal Law. (Pl. depo. Tr. P. 130, Exh. A)

19. Plaintiff also cannot identify where or when Mayor Drew falsely accused him of failing to inform him and other local officials about challenges facing MAT. (Pl. depo. Tr. P. 130, Exh. A)

20. Although Plaintiff claims that Mayor Drew made false statements that Middletown was the only district in these dire circumstances, suffering hardships, Plaintiff admits that he was not aware of other districts in the same position. (Pl. depo. Tr. P. 146, Exh. A)

21. Other than the information that Plaintiff read in Mayor Drew's letter; Plaintiff cannot identify when Mayor Drew stated that he misused MAT's line of credit. (Pl. depo. Tr. P. 146, Exh. A)

22. Mayor Drew did not state in his letter that "*Andrew Chiaravallo*" misused MAT's line of credit, rather, he said *MAT* misused its line of credit. (Pl. depo. Tr. P. 146-47, Exh. A, Drew Aff. ¶ 12, Exh. C)

23. Although Plaintiff alleges that "Defendant Drew's statement was that what MAT administrators told us has been pretty inconsistent so far", he admits that he did not hear Mayor Drew make this statement. Plaintiff cannot point to a time when he heard this statement. This is Plaintiff's speculation. (Pl. depo. Tr. P. 151, Exh. A)

24. Although Plaintiff claims that "[o]n June 28, 2017, Dan Drew stated that MAT made false projections in preparing budgets" he does not know when Mayor Drew made this statement. (Pl. depo. Tr. P. 153, Exh. A)

25. On June 28, 2017, Mayor Drew attended a meeting of the Lower Connecticut River Valley Council of Governments and Lower Connecticut River Valley Metropolitan Planning Meeting. While there, Mayor Drew did not say anything negative about Plaintiff's reputation or good name at the meeting. Instead, he provided a synopsis of MAT's financial condition as a whole. (Drew Aff. ¶ 14, Exh. C)

26. Plaintiff admits that cannot support his claim that "Mayor Drew's statement that he and local legislators learned about service cuts from the members of the public after they had been announced was false." (Pl. depo. Tr. P. 154, Exh. A)

27. Plaintiff has no proof that this statement is false (Id.) because Mayor Drew did not have specific information about MAT's specific proposed service cuts. (Pl. depo. Tr. P. 154-55, Exh. A, Drew Aff. ¶ 8, 17, Exh. C)

28. There is no evidence that Mayor Drew made any comments about Plaintiff's personal integrity, personal or professional reputation during his synopsis at the meeting on June 28th. (Pl. depo. Tr. P. 155, Exh. A)

29. Plaintiff's concerns are mostly based on his perception that Mayor Drew's approach was hurtful. (Pl. depo. Tr. P. 157, Exh. A)

30. In a letter dated June 9, 2017, Mayor Drew outlined his discovery of MAT's dire financial conditions. Mayor Drew asked the Plaintiff to provide several documents in an effort to understand the cause of MAT's conditions, and in an effort to fix it. (Drew Aff. ¶ 8, Exh. C, June 9th Ltr., Exh. E)

31. On June 23, 2017, Mayor Drew filed a Title VI complaint with the Federal Transit Administration seeking assistance in ensuring that the Middletown Area Transit does not close key routes. The complaint outlined what the City believed to be a disproportionate impact to communities in need of public transit, and outlined our belief that MAT did not follow proper procedure in noticing, hearing, and ultimately canceling routes. (Drew Aff. ¶ 10, Exh. C)

32. On June 27, 2017, Mayor Drew sent a letter to Plaintiff and the MAT Board of Directors in which he requested that Plaintiff either resign or that the Board terminate his employment. (June 27th ltr. Exh. F; Drew Aff. ¶ 13, Exh. C)

33. In this letter, Mayor Drew states in part: "As you know, the City recently became aware of a whole host of financial and mismanagement concerns with MAT. . . . Your contract is currently on my desk for renewal, along with the substantial appropriation that accompanies it. I will not sign the contract or release the funds until the following are met . . . ." (June 27th Ltr., Exh. F, Drew Aff. ¶ 11, Exh. C).

34.     In this letter, Mayor Drew did not make any statements about Plaintiff's reputation, good name, or character. Instead, he stated that he became aware of "MAT's" financial and management concerns. (Drew Aff. ¶ 12, Exh. C; June 27th Ltr., Exh. F).

35.     Moreover, while Mayor Drew requested that Plaintiff resign or be terminated, he did not have governing authority over MAT, essentially, Plaintiff. Additionally, the City does not have governing authority over MAT. (Drew Aff. ¶ 13, Exh. C).

36.     In a letter to Defendant Drew dated June 29, 2017, signed by each of the directors of MAT, MAT's Board of Directors wrote, "In response to your letter dated June 27, 2017, please be advised that, at your direction, the Board of Commissioners of Middletown Area Transit has terminated the employment of [Plaintiff] . . . ."  (Compl.¶ 80; Drew Aff. ¶ 15, Exh. C).

37.     The MAT Board voted to terminate Plaintiff. (Lawrence Depo T. PP. 143-44, Exh. )

38.     On June 29, 2017, Mayor Drew informed the Board that he would release the funds for MAT as soon as it passes a formal resolution to meet the conditions expressed in his prior letter. (Drew Aff. ¶ 16, Exh. C; Drew 29th Ltr., Exh. G).

39.     On June 30, 2017, MAT's Board of Directors voted, at a Special Meeting, to terminate Plaintiff's employment, with each member of the Board of Directors voting in favor of termination. (Compl.¶ 82).

40.     MAT formalized its termination of Plaintiff and requested state oversight in a written resolution drafted by the City's General Counsel, Brigham Smith, acting in his official capacity as General Counsel for the City, as directed by Mayor Drew, in drafting the resolution.  (Compl.¶ 85).

41.     Defendant Drew's statements were adopted and ratified by the City, the Board of Directors, and MAT. (Id., ¶ 106, 113.)

42.     Defendants provided Plaintiff a meaningful opportunity to be heard before the Board of Directors at his termination hearing and he did so. (Pl. depo. Tr. P. 141, Exh. A)

43.     Although Plaintiff alleges that Defendants did not provide him with an opportunity to be heard before his termination, Plaintiff admits that he fully presented the Board with explanations of his actions. (Pl. depo. Tr. P. 158, Exh. A)

44.     Plaintiff admits that if he wanted to, he could have addressed in more details, the specific concerns raised at the meeting. (Pl. depo. Tr. P. 163-64, Exh. A)

45.     Plaintiff was provided with an opportunity to be heard, and he used that opportunity to outline everything that he needed to say. (Pl. depo. Tr. P. 164, Exh. A)

46.     Plaintiff admits that he did not take advantage of any opportunity to try to make Mayor Drew's alleged false statements correct. (Id.)

47.     Plaintiff admits that he did not provide any written letter to the editor of any newspaper outlet to explain his side of the story, or to correct any false statement. (Id.)

48.     Plaintiff also admits that he did not take advantage of the opportunity to write a letter to the editor of the local Middletown press or the Common Council to explain his side of the events at issue. (Pl. depo. Tr. P. 165, Exh. A)

    THE DEFENDANTS,
    CITY OF MIDDLETOWN

    By /s/Michael J. Rose
    Michael J. Rose [ct14803]
    Rauchell Beckford-Anderson [ct 30892]
    Rose Kallor, LLP
    750 Main Street, Suite 1108-3
    Hartford, CT  06103
    (860) 361-7999
    (860) 270-0710 (Fax)
    Email: mrose@rosekallor.com
        rbeckfordanderson@rosekallor.com

## **CERTIFICATION**

      I certify that a copy of this document was or will immediately be mailed or delivered electronically or non-electronically on November 30, 2020, to all attorneys and self-represented parties of record and to all parties who have not appeared in this matter and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

Magdalena B. Wiktor, Esq.
Madsen, Prestley & Parenteau, LLC
105 Huntington Street
New London, CT 06320
Email: mwiktor@mppjustice.com

                                    /s/ Michael J. Rose
                                        Michael J. Rose