# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ANDREW CHIARAVALLO** | : | **Civil No. 3:18-CV-1360(SRU)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF MIDDLETOWN AND** | : | |
| **DANIEL DREW** | : | |
| **Defendants** | : | **FEBRUARY 22, 2021** |

## PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT OF FACTS IN OPPOSITION TO SUMMARY JUDGMENT

1.      Plaintiff alleges that Middletown Transit District (colloquially known as "Middletown Area Transit" and hereinafter referred to as "MAT") employed Plaintiff as its district manager/chief executive officer with the title of Administrator from April 2012, through his termination on June 30, 2017. (Compl., ¶¶ 3, 16, 18, 82).

   **Response**:  **Admitted.**

2.      The MAT Board of Directors appointed Plaintiff to this position. (Id., ¶ 16).

   **Response**:  **Admitted.**

3.       MAT is a "body corporate and politic" that was established by seven municipalities pursuant to Conn. Gen. Stat. § 7-273b, including the City of Middletown and the Towns of Middlefield, Portland, Cromwell, East Hampton, Durham and the City of Meriden. (Id., ¶ 3, 4).

   **Response**:  **Admitted.**

4.      In his role as Administrator, Plaintiff was responsible for overseeing and managing the operations of MAT. (Pl's Compl. ¶ 18.)

   **Response**:  **Admitted, based on Complaint, ¶ 19.**

5.     The affairs of MAT are managed by a Board of Directors constituted in accordance with Conn. Gen. Stat. § 7-273c.  (Id.).

**Response:  The evidence cited does not support this statement.  Plaintiff admits that MAT has a Board of Directors.  Plaintiff denies that, with respect to the facts of this case, MAT's Board of Directors managed MAT's affairs without control, influence, coercion, or direction, by Defendant Drew and the City of Middletown.  For instance, MAT terminated Plaintiff's employment because Defendant Drew directed MAT to do so and because Defendant Drew and the City coerced MAT to terminate Plaintiff's employment by threatening to withhold a contract and funding upon which MAT relied. (Doc. Nos. 86-7; 86-8.)**

6.     At all times relevant to this Complaint, MAT's Board of Directors was comprised of six directors. (Id., ¶¶ 3, 5).

**Response:  Admitted.**

**7.**     At all times relevant to the Complaint Defendant Drew was the Mayor for the City of Middletown (Id.).

**Response:  Admitted.**

8.     As Administrator of MAT, Plaintiff was responsible for overseeing and managing MAT's operations. (Id., ¶ 19). In his capacity as Administrator, Plaintiff reported directly to MAT's Board of Directors. (Id., ¶ 20).

**Response:  Admitted.**

9.     In addition to funding from the State of Connecticut, MAT received funding from the Federal Transit Administration and Defendant City. (Id., ¶ 23).

**Response:  Admitted.**

10.     In 2017, Mayor Drew made several communications regarding MAT's performance. On June 9, 2017, Defendant Drew sent Plaintiff a letter in which Mayor Drew stated that he learned about MAT's service cuts after they were announced, and only after he was told by members of the public that service had been cut (Compl., ¶ 53; June 9th Ltr. Exh. E, Mayor's Depo trans, pp.48-49 Exh. B).

**Response:  Admitted in part; Denied in part.  The following portion of this paragraph is admitted:  "In 2017, Mayor Drew made several communications regarding MAT's performance. On June 9, 2017, Defendant Drew sent Plaintiff a letter . . . ."  The remainder of the paragraph is denied to the extent that it does not precisely state what Defendant Drew wrote in the June 9, 2017 letter.  The June 9, 2017 letter is part of the record (Doc. No. 86-6) and speaks for itself.**

11.     The letter also contained statements that MAT implemented anticipated service cuts in a way that potentially violated federal law and Plaintiff failed to inform Mayor Drew and other local officials about the challenges MAT faced. (Compl., ¶¶ 54, 55; June 9th Ltr. Exh. E, Drew Aff. ¶ 9, Exh.  C)

**Response:  Admitted in part; Denied in part.  Plaintiff admits that Defendant Drew sent the June 9, 2017 letter to Plaintiff and that the letter contained statements regarding service cuts that potentially violated federal law and that Plaintiff failed to inform Defendant Drew and other local officials about the challenges that MAT faced, but denies that this paragraph precisely and accurately reflects the entirety of what Drew stated in the June 9, 2017 letter.  For instance, Drew wrote in the June 9, 2017 letter that "you," referring to Plaintiff, made the service cuts.  (Doc. No. 86-6.)**

12.     Instead, Mayor Drew received emails and phone calls at his office about the specific

service cuts. Constituents of the City of Middletown also made comments on social media and organized public rallies outside of MAT. (Mayor's Depo trans, p.49 Exh. B, Drew Aff. ¶ 17, Exh. C).

**Response**:  **Admitted in part; Denied in part.  Plaintiff denies that Defendant Drew first learned about the anticipated cuts from sources other than Mr. Chiaravallo as Mr. Chiaravallo sent an email to Defendant Drew on May 12, 2017 notifying him of the cuts prior to the cuts being announced and including information regarding the specific cuts. (May 12, 2017 e-mail with attachment, Ex. D; Pl's Declaration ¶ 18, Ex. R.)  The remainder of the paragraph is admitted.**

13.    In May or June of 2017, Mayor Drew became aware of financial and management concerns with MAT. He learned this information from constituents through complaints concerning closures to routes H and I, and the discontinuation of the evening service. He subsequently also learned that the scope of the problem was serious and required a serious solution. (Drew Aff. ¶ 6, Exh. C)

**Response**:  **Denied that Defendant Drew only became aware of financial and management concerns with MAT in May or June 2017, and that he learned the information from complaints from constituents.  In November 2016, Plaintiff sent a letter to Defendant Drew and others explaining that MAT was increasing rates due a cut in funding from the State of Connecticut and that "[t]he decision to increase fares was implemented in lieu of cutting service. However, if the fare increase does not offset the decreased funding, service cuts may still be required. This will be evaluated after ridership data has been analyzed sometime near the end of FY2017."  (November 2016 letter, Ex. A.) In March 2017, Plaintiff advised Drew again that there was a potential for service cuts and**

cited concerns relating to funding from the State of Connecticut. (Pl's Declaration ¶ 12, Ex. R.) On May 12, 2017, Plaintiff notified Defendant Drew by e-mail that MAT was implementing service cuts, before MAT announced those cuts to the public. (May 12, 2017 e-mail with attachment, Ex. D; Compl. ¶ 48; Answ. ¶ 48; Pl's Declaration ¶ 18, Ex. R.)

14.     Plaintiff did not inform Mayor Drew about the extent of the severity of MAT's finances, or that its continued operation was in jeopardy. (Mayor's Depo trans, p.51 Exh. B, Drew Aff. ¶ 7, Exh. C).

    **Response:  Plaintiff denies that the evidence offered and cited by Defendant establishes this fact.  Plaintiff also avers that Plaintiff's warnings to Defendant Drew about the potential for service cuts in November 2016 and March 2017 should have informed Drew that MAT's problems were severe.  (See response to ¶ 13 above.) Furthermore, by May 31, 2017, Plaintiff had made Defendant Drew fully aware of the severity of MAT's situation.  (Declaration of Andrew Chiaravallo ¶ 23, Ex. R.)**

15.     Plaintiff did not specifically inform Mayor Drew in advance about what service cuts were going to be made. (Pl. depo. Tr. P. 126, Exh. A, Drew Aff. ¶ 17, Exh. C)

    **Response:  Plaintiff denies that he did not inform Defendant Drew in advance about what service cuts were going to be made.  On May 12, 2017, Plaintiff notified Drew by e-mail that MAT would be implementing bus and van service cuts, and also provided Drew with an attached copy of a letter to the State of Connecticut Department of Transportation which identified the following proposed cuts to take effect on July 1, 2017, following notice to the public and a hearing: "[o]ur proposal is to eliminate nighttime fixed and paratransit service Monday through Saturday.  We are currently closed on Sundays.  Routes H & I fixed routes apply.  We will also be reducing the**

MLink (M route) service by about 40% Monday through Friday." (Compl. ¶ 48; Answer ¶48; May 12, 2017 email with attachment, Ex. D). Plaintiff's May 12, 2017 e-mail to Drew also informed Drew that, effective June 3, 2017, MAT would be eliminating Saturday evening bus and van service, although Plaintiff did not identify in his May 12, 2017 e-mail the specific routes on Saturday evening which would be impacted starting on June 3, 2017. (May 12, 2017 e-mail, Ex. D; Plaintiff Declaration ¶ 18, Ex. R.)

16. Plaintiff cannot recall whether Mayor Drew stated that "*Andrew Chiaravallo*", implemented cuts in a way that violates Federal law, instead of MAT. (Pl. depo. Tr. P. 127, Exh. A).

**Response: Denied. While Plaintiff could not recall that detail during his deposition, Defendant Drew's June 9, 2017 letter is in the record and it states that Plaintiff implemented service cuts. (Doc. No. 86-6.)**

17. While Plaintiff generally told Mayor Drew about MAT's situation, he did not tell the Mayor about the level of crisis that MAT was facing. (Pl. depo. Tr. P. 128, Exh. A, Drew Aff. ¶ 18, Exh. C)

**Response: Admitted in part; Denied in part. At certain times, Plaintiff told Defendant Drew generally about MAT's situation, while at other times, Plaintiff provided Defendant Drew with more detail regarding MAT's situation. (See Plaintiff's responses to ¶¶ 13-15 above; Pl's Declaration ¶¶ 9, 12, 13, 15-16, 18, Ex. R.)**

18. Plaintiff cannot identify where in Mayor Drew's letter that the Mayor falsely accused *him* of implementing service cuts in a way that potentially violates Federal Law. (Pl. depo. Tr. P. 130, Exh. A)

**Response: Denied. While Plaintiff could not recall that detail during his**

deposition, Defendant Drew's June 9, 2017 letter is in the record and it states that Plaintiff implemented service cuts. (Doc. No. 86-6.)

19.     Plaintiff also cannot identify where or when Mayor Drew falsely accused him of failing to inform him and other local officials about challenges facing MAT. (Pl. depo. Tr. P. 130, Exh. A)

**Response:  Denied.  While Plaintiff could not recall that detail during his deposition, Defendant Drew's June 9, 2017 letter is in the record and its evidentiary value does not depend on Plaintiff's recall of what is in the letter itself.  (Doc. No. 86-6.)**

20.     Although Plaintiff claims that Mayor Drew made false statements that Middletown was the only district in these dire circumstances, suffering hardships, Plaintiff admits that he was not aware of other districts in the same position. (Pl. depo. Tr. P. 146, Exh. A)

**Response:  Denied. This statement is not established by the evidence cited and it misstates Plaintiff's deposition testimony.  On page 146 of his deposition, Plaintiff indicated that he was not aware of other transit districts who were taken over by the State; Plaintiff did not say that he was not aware of other districts who were suffering financial hardships.  (Chiaravallo Depo. at 146, Doc. No. 86-2, p. 14.)  The financial difficulties facing MAT were not unique to MAT among transit districts in the state, all of which had seen cuts in operational funding from the State of Connecticut over multiple years. (Plaintiff's Declaration ¶ 24, Ex. R.)**

21.     Other than the information that Plaintiff read in Mayor Drew's letter; Plaintiff cannot identify when Mayor Drew stated that he misused MAT's line of credit. (Pl. depo. Tr. P. 146, Exh. A)

**Response: Denied. Although Plaintiff could not recall this detail during his deposition, there is other evidence in the record of Drew making this statement, including Defendants' admissions in the Answer. (Compl. ¶¶ 77, 103, Doc. No. 1; Answer ¶¶ 77, 103, Doc. No. 61; June 28, 2017 minutes, page P124, Ex. N.)**

22.    Mayor Drew did not state in his letter that "*Andrew Chiaravallo*" misused MAT's line of credit, rather, he said *MAT* misused its line of credit. (Pl. depo. Tr. P. 146-47, Exh. A, Drew  Aff. ¶ 12, Exh. C)

**Response:  Denied as stated. (Compl. ¶¶ 77, 103, Doc. No. 1; Answer ¶¶ 77, 103, Doc. No. 61; June 28, 2017 minutes, page P124, Ex. N.)    By framing these charges in the context of a justification or an explanation for his action the previous day to demand Plaintiff's resignation or forced removal, (June 28, 2017 minutes, page P123, Ex. N), Defendant Drew presented these allegations as problems or failures for which Plaintiff was personally responsible.  (Pl's Declaration ¶ 43, Ex. R.)**

23.    Although Plaintiff alleges that "Defendant Drew's statement was that what MAT administrators told us has been pretty inconsistent so far", he admits that he did not hear Mayor Drew make this statement. Plaintiff cannot point to a time when he heard this statement. This is Plaintiff's speculation. (Pl. depo. Tr. P. 151, Exh. A)

**Response:  Deny that Plaintiff is speculating that Drew made this statement. While Plaintiff testified that he could not recall personally hearing Defendant Drew make this statement, there is other record evidence demonstrating that Defendant Drew made this statement in a public setting, including Defendants' admission in their Answer. (June 28, 2017 minutes, page P124, Ex. N; Compl. ¶ 71; Answer ¶ 71, Doc. No. 61.)**

24.    Although Plaintiff claims that "[o]n June 28, 2017, Dan Drew stated that MAT made

false projections in preparing budgets" he does not know when Mayor Drew made this statement. (Pl. depo. Tr. P. 153, Exh. A)

**Response: Denied. During a public presentation on June 28, 2017, and after referring to the MAT Administrator several times in connection with the problems facing MAT, Defendant Drew attributed part of the problem to "their false projections" regarding budgets, which he attributed to Plaintiff. (June 28, 2017 minutes, page P124, Ex. N; Compl. ¶ 69; Answer ¶ 69, Doc. No. 61; Drew 7/13/20 30(b)(6) Depo. at 91-92, 94-95, Ex. H.)**

25.    On June 28, 2017, Mayor Drew attended a meeting of the Lower Connecticut River Valley Council of Governments and Lower Connecticut River Valley Metropolitan Planning Meeting. While there, Mayor Drew did not say anything negative about Plaintiff's reputation or good name at the meeting. Instead, he provided a synopsis of MAT's financial condition as a whole. (Drew Aff. ¶ 14, Exh. C)

**Response: Admit that Defendant Drew attended this meeting, but deny that Drew did not say anything negative about Plaintiff's reputation or good name at the meeting. (June 28, 2017 minutes, pp. P123-24, Ex. N.) By framing his charges in the context of a justification or an explanation for his action the previous day to demand Plaintiff's resignation or forced removal, (June 28, 2017 minutes, page P123, Ex. N), Defendant Drew presented these allegations as problems or failures for which Plaintiff was personally responsible. Those in attendance knew that Plaintiff was MAT's Administrator. (Plaintiff's Declaration ¶¶ 43-44, Ex. R.)**

26.    Plaintiff admits that cannot support his claim that "Mayor Drew's statement that he and local legislators learned about service cuts from the members of the public after they had been

announced was false." (Pl. depo. Tr. P. 154, Exh. A)

**Response**: **Denied. Plaintiff notified Defendant Drew and other legislators about the service cuts before they were announced to the public. (See ¶¶ 13-15 above; Pl's Declaration ¶ 18, Ex. R.) Plaintiff also notified at least one legislator of the cuts before the public was notified. (Plaintiff's Declaration ¶ 21, Ex. R.)**

27.    Plaintiff has no proof that this statement is false (Id.) because Mayor Drew did not have specific information about MAT's specific proposed service cuts. (Pl. depo. Tr. P. 154-55, Exh. A, Drew Aff. ¶ 8, 17, Exh. C)

**Response: Denied. (See ¶¶ 13-15 above; Pl's Declaration ¶ 18, Ex. R.)**

28.    There is no evidence that Mayor Drew made any comments about Plaintiff's personal integrity, personal or professional reputation during his synopsis at the meeting on June 28th. (Pl. depo. Tr. P. 155, Exh. A)

**Response: Denied. (See ¶ 25 above.)**

29.    Plaintiff's concerns are mostly based on his perception that Mayor Drew's approach was hurtful. (Pl. depo. Tr. P. 157, Exh. A)

**Response: Denied. While Plaintiff does claim that Drew's actions were hurtful, there is record evidence beyond Plaintiff's perception of harm that Drew published stigmatizing statement about him without providing due process, and caused Plaintiff's termination of employment. (See, e.g., ¶¶ 13-15 above; Compl. ¶ 51-52, 63, 67, 69, 71, 73, 75, 77; Answer ¶ 51-52, 63, 67, 69, 71, 73, 75, 77; Doc. No. 86-6; Doc. No. 86-7; Doc. No. 86-8; Drew 7/13/20 30(b)(6) Depo. at 57, 91-92, 94-95, Ex. H; Drew 7/14/20 30(b)(6) Depo. at 142, 145-46, Ex. I; Drew 7/15/20 Depo. at 111-15, 117, 129-30, 136-142, , Ex. J; June 21, 2017 Press Release, Ex. K; June 28, 2017 minutes, pp. P123-124, Ex. N; Title VI Compl,**

Ex. L; Facebook Post, Ex. M; MAT 30(b)(6) Depo. at 24, 122, Ex. O.)

30.     In a letter dated June 9, 2017, Mayor Drew outlined his discovery of MAT's dire financial conditions. Mayor Drew asked the Plaintiff to provide several documents in an effort to understand the cause of MAT's conditions, and in an effort to fix it. (Drew Aff. ¶ 8, Exh. C, June 9th Ltr., Exh. E)

**Response:  Admit that Drew sent the June 9, 2017 letter, which is in the record. (Doc. No. 86-6.)  The letter speaks for itself, but Plaintiff denies that Drew's letter accurately "outlined his discovery of MAT's dire financial conditions."  (See, e.g., ¶¶ 13-15 above; Pl's Declaration ¶¶ 9, 12-13, 15-16, 18, Ex. R.)**

31.     On June 23, 2017, Mayor Drew filed a Title VI complaint with the Federal Transit Administration seeking assistance in ensuring that the Middletown Area Transit does not close key routes. The complaint outlined what the City believed to be a disproportionate impact to communities in need of public transit, and outlined our belief that MAT did not follow proper procedure in noticing, hearing, and ultimately canceling routes. (Drew Aff. ¶ 10, Exh. C)

**Response:  Admit that the complaint was filed. The document speaks for itself, but Plaintiff denies that he implemented cuts in violation of the law.  (Plaintiff's Declaration ¶¶ 20, 27, Ex. R.)**

32.     On June 27, 2017, Mayor Drew sent a letter to Plaintiff and the MAT Board of Directors in which he requested that Plaintiff either resign or that the Board terminate his employment. (June 27th ltr. Exh. F; Drew Aff. ¶ 13, Exh. C)

**Response:  Admitted, but Plaintiff denies that Drew "requested" that Plaintiff either resign or be terminated.  Drew demanded that Plaintiff resign and that MAT's Board terminate Plaintiff's employment if Plaintiff refused to resign.  (7/15/20 Drew**

**Depo. at 115, 117, 129-30, 142, Ex. J; Drew 7/14/20 30(b)(6) Depo. at 142, Ex I.)  MAT's Board confirmed that they terminated Plaintiff's employment at Drew's direction.  (Doc. No. 86-8.)**

33.     In this letter, Mayor Drew states in part: "As you know, the City recently became aware of a whole host of financial and mismanagement concerns with MAT. Your contract is currently on my desk for renewal, along with the substantial appropriation that accompanies it. I will not sign the contract or release the funds until the following are met " (June 27th Ltr., Exh. F, Drew Aff. ¶ 11, Exh. C).

        **Response: Admitted.**


34.     In this letter, Mayor Drew did not make any statements about Plaintiff's reputation, good name, or character. Instead, he stated that he became aware of "MAT's" financial and management concerns. (Drew Aff. ¶ 12, Exh. C; June 27th Ltr., Exh. F).]

        **Response: Denied.  Drew's letter demanded that Plaintiff resign or be terminated, and thereby portrayed that Plaintiff was personally responsible for all of the problems that he alleged with MAT over the previous several weeks in June.  (Doc. No. 86-7.)**

35.     Moreover, while Mayor Drew requested that Plaintiff resign or be terminated, he did not have governing authority over MAT, essentially, Plaintiff. Additionally, the City does not have governing authority over MAT. (Drew Aff. ¶ 13, Exh. C).

        **Response: Denied.  See response to ¶ 32 above.**

36.     In a letter to Defendant Drew dated June 29, 2017, signed by each of the directors of MAT, MAT's Board of Directors wrote, "In response to your letter dated June 27, 2017, please be advised that, at your direction, the Board of Commissioners of Middletown Area Transit has

terminated the employment of [Plaintiff] . . . ." (Compl.¶ 80; Drew Aff. ¶ 15, Exh. C).

**Response: Admitted.**

37.     The MAT Board voted to terminate Plaintiff. (Lawrence Depo T. PP. 143-44, Exh. )

**Response: Admitted, but the MAT Board did so in order to comply with Drew's demand which was a condition of obtaining the funds from the City of Middletown that Drew controlled. (MAT 30(b)(6) Depo. at 24, 122, 138-39, Ex. O.)**

38.     On June 29, 2017, Mayor Drew informed the Board that he would release the funds for MAT as soon as it passes a formal resolution to meet the conditions expressed in his prior letter. (Drew Aff. ¶ 16, Exh. C; Drew 29th Ltr., Exh. G).

**Response: Admitted.**

39.     On June 30, 2017, MAT's Board of Directors voted, at a Special Meeting, to terminate Plaintiff's employment, with each member of the Board of Directors voting in favor of termination. (Compl.¶ 82).

**Response: Admitted. (See ¶ 37 above.).**

40.     MAT formalized its termination of Plaintiff and requested state oversight in a written resolution drafted by the City's General Counsel, Brigham Smith, acting in his official capacity as General Counsel for the City, as directed by Mayor Drew, in drafting the resolution. (Compl.¶ 85).

**Response: Admitted. (See ¶ 37 above.)**

41.     Defendant Drew's statements were adopted and ratified by the City, the Board of Directors, and MAT. (Id., ¶ 106, 113.)

**Response: Admitted. (See ¶ 37 above.)**

42.     Defendants provided Plaintiff a meaningful opportunity to be heard before the Board of

Directors at his termination hearing and he did so. (Pl. depo. Tr. P. 141, Exh. A)

**Response: Denied. There was no hearing and MAT terminated Plaintiff as part of a pre-determined out come to comply with Drew's demand. (See ¶ 37 above; Plaintiff's Declaration ¶ 46; Ex. R.)**

43.     Although Plaintiff alleges that Defendants did not provide him with an opportunity to be heard before his termination, Plaintiff admits that he fully presented the Board with explanations of his actions. (Pl. depo. Tr. P. 158, Exh. A)

**Response: Denied. There was no hearing and MAT terminated Plaintiff as part of a pre-determined out come to comply with Drew's demand. (See ¶¶ 37, 42 above.)**

44.     Plaintiff admits that if he wanted to, he could have addressed in more details, the specific concerns raised at the meeting. (Pl. depo. Tr. P. 163-64, Exh. A)

**Response: Admitted in part; Denied in part. It is not entirely clear which meeting is referenced in this paragraph. But Plaintiff received no hearing and MAT terminated Plaintiff as part of a pre-determined out come to comply with Drew's demand. (See ¶¶ 37, 42 above.) (See also Plaintiff's Declaration ¶ 46, Ex. R.)**

45.     Plaintiff was provided with an opportunity to be heard, and he used that opportunity to outline everything that he needed to say. (Pl. depo. Tr. P. 164, Exh. A)

**Response: Admitted in part; Denied in part. (See ¶¶ 37, 42, 44 above.)**

46.     Plaintiff admits that he did not take advantage of any opportunity to try to make Mayor Drew's alleged false statements correct. (Id.)

**Response: Denied. It is not clear what "opportunity" that this statement is claiming that Plaintiff failed to "take advantage of," but Drew admits that Defendants did not provide Plaintiff with a hearing. (Drew 7/15/20 Depo. at 139-41, Ex. J), and**

**neither did MAT. (See ¶¶ 37, 42, 44 above.)**

47.     Plaintiff admits that he did not provide any written letter to the editor of any newspaper outlet to explain his side of the story, or to correct any false statement. (Id.)

     **Response:  Admitted, but irrelevant.**

48.     Plaintiff also admits that he did not take advantage of the opportunity to write a letter to the editor of the local Middletown press or the Common Council to explain his side of the events at issue. (Pl. depo. Tr. P. 165, Exh. A)

     **Response:  Admitted, but irrelevant.**


## Additional Material Facts

49.     On March 8, 2017, Plaintiff notified Defendant Drew about potential service cuts and explained that MAT was experiencing a financial shortfall due to either budget cuts from the State of Connecticut, or appropriations from the State of Connecticut which did not include customary increases from the previous year's appropriation.  (Pl's Declaration ¶ 12, Ex. R.)

50.     On March 8, 2017, Plaintiff also told Mayor Drew that MAT would be making service cuts if it did not receive additional funding and that I was seeking funding from the State of Connecticut.  I also advised Mayor Drew that it was the first time in MAT's history that we were looking at service cuts.  Pl's Declaration ¶ 12, Ex. R.)

51.     Plaintiff's warnings to Defendant Drew about the potential for service cuts in November 2016 and March 2017 should have informed Drew that MAT's problems were severe.  (Pl's Declaration ¶ 13, Ex. R.)

52.     On April 10, 2017, City of Middletown's Common Council held Department Budget Hearings, during which Daniel Drew was present and during which Plaintiff appeared and spoke regarding MAT's annual funding request to the City.  (Pl's Declaration ¶ 15, Ex. R.)

53.     At the April 10, 2017 budget hearings before the Common Council, Plaintiff stated that MAT had already experienced funding cuts from the state and that raising fares had not made up for those cuts. Plaintiff further stated that even larger state funding cuts were anticipated and that any further cuts in state funding would result in service cuts. Plaintiff further stated that MAT was unable to expand or increase service to keep up with demand because of lack of funding. (Pl's Declaration ¶ 16, Ex. R.)

54.     In addition to Defendant Drew, Plaintiff contacted other government officials in early 2017 and shared information regarding MAT's financial challenges and requested assistance. (Pl's Declaration ¶¶ 10, 11, 14, 17, 21-22, Ex. R.)

55.     On May 12, 2017, Plaintiff wrote to Defendant Drew and notified him of the specific service cuts that were being implemented, before MAT announced those service cuts publicly. (Pl's Declaration ¶ 18, Ex. R; May 12, 2017 e-mail, Ex. D.)

56.     Before Plaintiff implemented service cuts, he contacted the FTA and confirmed that MAT was in compliance with the law and followed the proper process.  (Pl's Declaration ¶¶ 20, 27, Ex. R.)

57.     Plaintiff did not violate Title VI when he moved forward with service cuts.  (Pl's Declaration ¶¶ 20, 27, Ex. R.)

58.     The financial difficulties facing MAT were not unique to MAT among transit districts in the State, all of which had seen cuts in operational funding from the State of Connecticut over multiple years.  (Pl's Declaration ¶ 24, Ex. R.)

59.     Information about Drew's June 9, 2017 letter (Doc. No. 86-6) was made public, including over the internet, on television, and in newspapers, including by the Hartford Courant, the Middletown Press, WTNH, NBC Connecticut and the Yankee Institute.  (Pl's Declaration ¶ 25, Ex. R.)

60.     Daniel Drew's June 9, 2017 letter (Doc. No. 86-6) falsely stated that he learned about MAT's service cuts after they had been made public and only after he was told by members of the public that service had been cut, when in fact Plaintiff had notified him about service cuts on May 12, 2017 before those cuts were publicly announced.  (Pl's Declaration ¶ 26, Ex. R.)

61.     Daniel Drew's June 9, 2017 letter (Doc. No. 86-6) falsely accused Plaintiff of implementing anticipated service cuts in a way that potentially violated federal law.  (Pl's Declaration ¶ 27, Ex. R.)

62.     Daniel Drew's June 9, 2017 letter falsely accused Plaintiff of failing to inform him and other local officials about the challenges facing MAT.  (Pl's Declaration ¶ 28, Ex. R.)

63.     Plaintiff did not misuse any funds from the City of Middletown when he was Administrator of MAT.  (Pl's Declaration ¶ 29, Ex. R.)

64.     Defendant Drew's accusations that Plaintiff was guilty of mismanagement were not true and were contrary to evidence that Plaintiff was a good manager and leader of MAT during his tenure as Administrator.  (Pl's Declaration ¶ 30, Ex. R.)

65.     In approximately September 2016, MAT's line of credit balance was zero.  (Pl's Declaration ¶ 30, Ex. R.)

66.     A significant portion of MAT's problem in the 2016-2017 fiscal year related to the fact that funding for the State had been decreased, and the State also did not finalize its budget until approximately October that year.  (Pl's Declaration ¶ 30, Ex. R.)

67.     Based on MAT's annual audits, MAT's net financial position, i.e., the difference between assets and liabilities, increased by $8.5 million in fiscal year 2014, increased by $1.5 million in fiscal year 2015, increased by $600,000 in fiscal year 2016, and increased by $418,000 in fiscal year 2017.  (Pl's Declaration ¶ 30, Ex. R.)

68.     During Plaintiff's tenure as Administrator, Plaintiff oversaw a number of significant accomplishments, including many projects and initiatives that were paid for with grant money from the federal government or the State of Connecticut and did not impact operational funding. (Pl's Declaration ¶ 30, Ex. R.)

69.     Daniel Drew's false allegations that the service cuts made by Plaintiff violated federal law were publicly broadcast, including in the Hartford Courant, the Middletown Press, and on the internet.  (Pl's Declaration ¶ 32, Ex. R.)

70.     In his June 27, 2017 letter demanding Plaintiff's termination, Defendant Drew made accusations that Plaintiff had mismanaged MAT and that Plaintiff had not been forthcoming with information about MAT's financial situation, which were false.  (Pl's Declaration ¶ 34, Ex. R.)

71.     On June 28, 2017, Daniel Drew publicly stated that he and local legislators learned about service cuts from members of the public after they had been announced, which was false.  (Pl's Declaration ¶ 36, Ex. R; May 12, 2017 e-mail, Ex. D.)

72.     On June 28, 2017, Daniel Drew publicly stated that he and the legislative delegation didn't know about MAT's financial issues until the "last couple of weeks," which was false. (Pl's Declaration ¶ 37, Ex. R.)

73.     On June 28, 2017 Daniel Drew publicly stated that MAT made "false projections" in preparing budgets, a statement which implied that Plaintiff intentionally made false or fraudulent budgets, which was not true.  (Pl's Declaration ¶ 38, Ex. R.)

74.     On June 28, 2017, Daniel Drew publicly stated that "what [MAT administrators have] told us has been pretty inconsistent so far," which, in combination with his other statements about financial mismanagement and false budgets, and failing to share information, created an impression that Plaintiff was actively trying to cover up malfeasance or wrongdoing and Plaintiff was not being candid in response to inquiries and information requests because I was trying to hide something.  I did not make inconsistent statements to Drew in response to any of the inquiries or requests that he made to me while I was the Administrator of MAT.  (Pl's Declaration ¶ 39, Ex. R.)

75.     On June 28, 2017, Daniel Drew publicly stated that the operation of the new facility was not budgeted for, which was false.  This statement is false because the facility was budgeted for, operating costs were accounted for, and there was no deficit spending as a result of the new facility.   (Pl's Declaration ¶ 40, Ex. R.)

76.     On June 28, 2017, Daniel Drew publicly stated that the State warned MAT about the new facility, which was false.  The State of Connecticut supported MAT with respect to the new facility and did not communicate any warnings of the nature suggested by Daniel Drew during his January 28, 2017 presentation.  (Pl's Declaration ¶ 41, Ex. R.)

77.     On June 28, 2017 Daniel Drew publicly stated that MAT misused its line of credit, which was a false assertion.  It is common for transit districts such as MAT to utilize a line of credit in order to pay expenses while waiting for funding to be paid by the State of Connecticut.  In approximately September 2016, MAT's line of credit balance was zero.  (Pl's Declaration ¶ 42, Ex. R.)

78.     During his presentation on June 28, 2017, Defendant Drew framed the alleged problems and deficiencies relating to MAT as justifications or as explanations for his action the previous day to demand Plaintiff's resignation or forced removal as Administrator.  By doing this, Defendant Drew presented these allegations as problems or failures for which Plaintiff was personally responsible.  (Pl's Declaration ¶ 43, Ex. R.)

79.     Based on the minutes of who was in attendance at the June 28, 2017 meeting of the Lower Connecticut River Valley Council of Governments, those government officials knew who Plaintiff was and knew that Plaintiff was the Administrator of the MAT about whom Drew was speaking.  Plaintiff had interactions with many of those individuals in his capacity as MAT Administrator.  (Pl's Declaration ¶ 44, Ex. R.)

80.     Defendant Drew's demands that Plaintiff resign or be terminated were reported in the news media, including in the Hartford Courant.  (Pl's Declaration ¶ 45, Ex. R.)

81.     While Plaintiff had an opportunity to speak at the June 29, 2017 meeting with MAT's Board, the meeting was not about Plaintiff responding to Drew's allegations and refuting the substance of those allegations.  (Pl's Declaration ¶ 46, Ex. R.)

82.     At the meeting on June 29, 2017, with MAT's Board, there was no discussion about any of Plaintiff's actions that he had taken as MAT Administrator, such as his actions to cut service,

or relating to any of the financial or management issues claimed by Drew. The Board did not accuse me of mismanagement. (Pl's Declaration ¶ 46, Ex. R.)

83.     The discussion with MAT's Board on June 29, 2017 focused on what options were available and Plaintiff had an opportunity to speak with the Board on that subject. (Pl's Declaration ¶ 46, Ex. R.)

84.     It was clear to MAT's Board on June 29, 2017 that terminating Plaintiff's employment to comply with Drew's demand so that he would sign the contract and release the funding to MAT was the only option. MAT had no other choice but to comply with Drew's demand to terminate Plaintiff because of the leverage and authority that he was asserting, and because MAT desperately needed the funding from the City of Middletown that Drew was threatening to withhold unless Plaintiff resigned or unless MAT's Board terminated Plaintiff's employment. (Pl's Declaration ¶ 46, Ex. R.)

85.     At the meeting with MAT's Board on June 29, 2017, the Board members who spoke about the issue were defending Plaintiff and they stated that they did not agree with the Mayor's actions and that they were curious about his motives. (Pl's Declaration ¶ 46, Ex. R.)

86.     Plaintiff was not present when MAT's Board voted at a special meeting to terminate his employment. (Pl's Declaration ¶ 47, Ex. R.)

87.     MAT did not provide Plaintiff with a hearing before it terminated his employment. (MAT 30(b)(6) Depo. at 24, 122, Ex. O.)

88.     Plaintiff has suffered significant economic losses as a result of the termination of my employment with MAT in 2017. (Pl's Declaration ¶ 48, Ex. R.)

89.     Plaintiff has not been able to secure comparable employment as a senior manager or administrator in the field of public transportation.  (Pl's Declaration ¶ 48, Ex. R.)

90.     Since Plaintiff was terminated from his employment at MAT, the only job he held was a part-time position as an educational assistant at Albertus Magus College, which was certainly not comparable to his employment as Administrator of MAT, and it paid Plaintiff substantially less than his former salary as Administrator of MAT.  (Pl's Declaration ¶ 48, Ex. R.)

91.     Plaintiff lost most of his friendships with colleagues and associates at MAT, with whom he had good and positive relationships before Daniel Drew's actions and the termination of his employment.  (Pl's Declaration ¶ 48, Ex. R.)

92.     Daniel Drew's actions created unfounded suspicions about Plaintiff in his own community in Middletown.  (Pl's Declaration ¶ 48, Ex. R.)


                                        PLAINTIFF,
                                        Andrew Chiaravallo

                                        By:____/s/ *Todd D. Steigman*_____
                                        Todd D. Steigman (ct26875)
                                        Madsen, Prestley & Parenteau, LLC
                                        402 Asylum Street
                                        Hartford, CT 06103
                                        Tel: (860) 246-2466
                                        Fax: (860) 246-1794
                                        Email: tsteigman@mppjustice.com

## CERTIFICATION OF SERVICE

I hereby certify that on this 22nd day of February, 2021, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

_____/s/ Todd D. Steigman_____
Todd D. Steigman